IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MATRIX WARRANTY SOLUTIONS, INC., | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:21-CV-3111-K |
| THE STAUNTON GROUP LLC and RALPH CARRILLO, | § § § | |
| Defendants. | § § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Defendants The Staunton Group LLC and Ralph Carrillo's 12(b)(2) and 12(b)(6) Motion to Dismiss (the "Motion") (Doc. No. 7). Plaintiff Matrix Warranty Solutions, Inc. filed a Response in Opposition (the "Response") (Doc. No. 17), and Defendants The Staunton Group LLC and Ralph Carrillo filed a Reply in Support of the Motion (the "Reply") (Doc. No. 18). The Court has carefully considered the Motion, the Response, the Reply, the supporting appendices, the applicable law, and the record. Because Plaintiff does not establish a prima facie case of personal jurisdiction over these Defendants, the Court **GRANTS** the Motion on the basis of Federal Rule of Civil Procedure Rule 12(b)(2) and **dismisses** this case **without prejudice**. The Court does not reach the merits of Defendants' Motion with respect to failure to state a claim.

I.       **Factual and Procedural Background**

Plaintiff Matrix Warranty Solutions, Inc. ("Plaintiff") is a Nevada corporation with its principal place of business in Dallas, Texas.  Original Pet. (Doc. No. 5-3) at 1, ¶2.  Defendant The Staunton Group LLC ("Defendant TSG") is a Nevada limited liability company with its principal place of business in Aurora, Illinois.  *Id.*  The two members of Defendant TSG, non-party Jeffrey D. Lizee and Defendant Ralph Carrillo ("Defendant Carrillo"), are both citizens of the State of Illinois.  Am. Notice of Removal (Doc. No. 5) at 2, ¶3.

Plaintiff "creates comprehensive warranty solutions for various products and industries".  Original Pet. at 3, ¶9.  Motor vehicle service agreements and vehicle protection agreements (together, the "Service Agreements") are one of Plaintiff's main warranties.  *Id.*  Plaintiff contracted with various companies to market and sell the Service Agreements.  *Id.* at ¶10.  On September 23, 2019, Plaintiff entered into an agreement with Clear Path (the "Clear Path Agreement"), to market, sell, issue, and administer Plaintiff's Service Agreements, that remained in effect until either party terminated the Clear Path Agreement with 30 days' advance notice.  *Id.* at ¶¶11-12.

Plaintiff alleges Defendant TSG and Defendant Carrillo (collectively, "Defendants") interfered with Plaintiff's contractual relationship with Clear Path in the summer of 2021, through disparaging comments Defendants made to Clear Path about Plaintiff.  *Id.* at ¶¶13-15.  Plaintiff alleges that Defendants "held themselves out

as representatives of Sing for Service LLC d/b/a MEPCO, the nation's leader in financing service contracts of the type provided by [Plaintiff], and made these disparaging comments to Clear Path" which caused Clear Path to end its business relationship with Plaintiff. *Id.* at ¶¶15-16. Plaintiff further alleges that "Defendants made these communications in order to stop Clear Path from selling [Plaintiff's] Service Agreement and to compel Clear Path to sell the Staunton Group's preferred products which were from Dealer Loyalty Protection, Inc." *Id.* at 4, ¶17. Defendants' actions interfered with the Clear Path Agreement and that business relationship because Clear Path terminated its business relationship with Plaintiff as a result. *Id.* at ¶16.

Plaintiff initiated this action against Defendants in state court in Dallas County, Texas on September 8, 2021. *See* Am. Notice of Removal at 1. In its state court petition, Plaintiff asserts four claims against both Defendants: (1) violations of the Texas Deceptive Trade Practices Act (the "DTPA"), (2) tortious interference with an existing contract, (3) business disparagement, and (4) conspiracy. *See generally* Original Pet. Defendants removed the case to federal court on December 14, 2021, on the basis of diversity jurisdiction. Notice of Removal (Doc. No. 1) at 1; Am. Notice of Removal at 1. Defendants then filed their Motion to Dismiss for lack of personal jurisdiction and failure to state a claim which is fully briefed and ripe for the Court's determination.

Plaintiff did not amend its Original State Court Petition ("Petition") after the case was removed to this Court, therefore the state court petition remains the live pleading.

## II. Legal Standard

In a diversity action, personal jurisdiction over a non-resident defendant exists where allowed by the forum state's long-arm statute and the exercise of personal jurisdiction is consistent with federal due process. *See Def. Distributed v. Grewal*, 971 F.3d 485, 490 (5th Cir. 2020). The Texas long-arm statute extends to the limits of federal due process; therefore, the court need only determine if exercising personal jurisdiction over the defendant is consistent with federal due process. *Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018). "Due process requires that the defendant have 'minimum contacts' with the forum state (*i.e.*, that the defendant has purposely availed himself of the privilege of conducting activities within the forum state) and that exercising jurisdiction is consistent with 'traditional notions of fair play and substantial justice.'" *Danziger & De Llano, L.L.P. v. Morgan Verkamp, L.L.C.*, 24 F.4th 491, 495 (5th Cir. 2022) (quoting *Sangha*, 882 F.3d at 101); *see Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945). This requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts or the 'unilateral activity of another party or third person.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

Personal jurisdiction can be either general or specific. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006). This case involves only the latter. *See* Pl.'s Resp. at 10 n.2. (In referring to Plaintiff's Response, the Court cites to the page number assigned by the court's ECF system, not the document page number.) Specific jurisdiction exists when the plaintiff's claims arise out of or are related to a non-resident defendant's contacts which he "purposefully directed" at the forum state. *Burger King*, 471 U.S. at 472; *see also Sangha*, 882 F.3d at 101 ("Specific jurisdiction may exist 'over a nonresident defendant whose contacts with the forum state are singular or sporadic only *if* the cause of action asserted arises out of or is related to those contacts.'") (internal citation omitted). Citing decades-old precedent, the Supreme Court reiterated that that the focus in the specific jurisdiction inquiry must remain "on 'the relationship among the defendant, the forum, and the litigation.'" *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977))). "[T]he defendant's suit-related conduct must create a substantial connection with the forum State." *Id.* at 284. The Supreme Court has emphasized that "the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id.* at 285; *see also id.* at 284-85 ("[T]he relationship must arise out of contacts that the 'defendant *himself*' creates with the

forum State" and those contacts must be "with the forum State itself, not the defendant's contacts with persons who reside there."). These considerations and principles are equally applicable in the context of intentional torts. *Id.* at 286. "A forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum." *Id.*

A non-resident defendant may move to dismiss for lack of personal jurisdiction. FED. R. CIV. P. 12(b)(2). The plaintiff need only make a *prima facie* showing of personal jurisdiction where the court does not hold an evidentiary hearing on the motion. *Danziger & De Llano*, 24 F.4th at 495; *see also Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001) ("Establishing a prima facie case still requires the plaintiff to show the nonresident defendant's purposeful availment of the benefits and protections of and minimum contacts with the forum state."). Courts in this circuit conduct a three-step analysis in the specific jurisdiction inquiry:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there;
> (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and
> (3) whether the exercise of personal jurisdictions is fair and reasonable.

*Def. Distributed*, 971 F.3d at 490-91 (quoting *Seiferth*, 472 F.3d at 271). The plaintiff bears the burden of proof on the first two prongs and, only after those factors have

been established, the burden then shifts to the defendant to "make a compelling case" that the assertion of jurisdiction is unfair or unreasonable. *See Sangha*, 882 F.3d at 102. The court may consider the record as it exists at the time of the motion, "including affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 344 (5th Cir. 2002) (quoting *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985)). The court takes the uncontroverted, nonconclusory allegations in the plaintiff's complaint as true and resolves all controverted allegations in favor of the plaintiff. *Panda Brandywine*, 253 F.3d at 868. However, "such acceptance does not automatically mean that a *prima facie* case for [personal] jurisdiction has been presented." *Sangha*, 882 F.3d at 101 (internal quotation omitted).

## III.    Analysis

In their Motion, Defendants first argue the case must be dismissed under Rule 12(b)(2) because Plaintiff does not establish the Court can exercise personal jurisdiction over either of them as non-resident defendants. Defendants contend they have no contacts with Texas giving rise to Plaintiff's claims because the alleged comments Defendants made to Clear Path disparaging Plaintiff and causing Plaintiff's injury were made outside of Texas. Accordingly, specific jurisdiction does not exist and the case must be dismissed. Defendants also argue general jurisdiction does not exist but Plaintiff does not allege general jurisdiction exists. *See* Resp. at 10 n.2. Therefore,

Plaintiff has waived this argument and the Court does not address it herein. Defendants also move the Court to dismiss Plaintiff's claims for DTPA violations and conspiracy for failure to state a claim under Rule 12(b)(6).

Plaintiff responds that the Court can exercise personal jurisdiction over Defendants because their "conduct was intentional, expressly aimed at Texas, and caused [Plaintiff] an injury that Defendants should have anticipated would be suffered in Texas" and this sufficiently establishes minimum contacts with Texas. *Id.* at 11. Plaintiff then contends the following facts support this conclusion—Clear Path sells Plaintiff's products in Texas under the Clear Path Agreement, the Clear Path Agreement contains a Texas choice-of-law provision, Plaintiff is a Texas entity, and revenues flow to Plaintiff in Texas from the Clear Path Agreement. *Id.* Plaintiff submits evidence in support of its Response, including the affidavit of Jay Tuerk, Plaintiff's CEO and the Clear Path Agreement. *See* Exs. A (Doc. No. 17-1) & A-1 (Doc. No. 17-2).

In their Reply, Defendants again assert that specific jurisdiction cannot be exercised over them. First, Defendants argue that Plaintiff's State Court Petition is completely devoid of allegations showing how Defendants' conduct was a "contact" with Texas since it was made to Clear Path outside of Texas, so there can be no specific jurisdiction over them. Defendants also contend that Plaintiff's responsive argument shifts the focus of the specific jurisdiction inquiry to its own contacts with Texas rather

than the contacts Defendants' themselves created, and the United States Supreme Court has repeatedly rejected this as improper.

The Court did not conduct an evidentiary hearing on the Motion; therefore, Plaintiff must establish only a *prima facie* case of personal jurisdiction. *Sangha*, 882 F.3d at 101. "Although jurisdictional allegations must be accepted as true, such acceptance does not automatically mean that a *prima facie* case for personal jurisdiction has been presented." *Id.* (cleaned up). The plaintiff must nevertheless "show the nonresident defendant's purposeful availment of the benefits and protections of and minimum contacts with the forum state." *Panda Brandywine*, 253 F.3d at 868.

In this case, Plaintiff asserts specific jurisdiction may be exercised over Defendants. It is undisputed that Plaintiff's claims for violations of the Texas DTPA, tortious interference with an existing contract, business disparagement, and conspiracy arise out of the same alleged tortious action: Defendants' disparaging statements that resulted in Clear Path terminating its business relationship with Plaintiff, a Texas entity. The Court can exercise specific personal jurisdiction over non-resident defendants "only *if* the cause of action asserted arises out of or is related to those [forum state] contacts." *Sangha*, 882 F.3d at 101. The court is not required to analyze contacts for each claim when those claims arise from or relate to the same contact. *Sedillo as Tr. of Filo and Fran Sedillo Revocable Tr. v. Team Techs., Inc.*, Civ. Action No. 3:20-CV-1628-

D, 2020 WL 6870711, at *3 (N.D. Tex. Nov. 23, 2020)(Fitzwater, S.J.); *see also Seiferth*, 472 F.3d at 274-75.

The Court has considered Plaintiff's allegations, argument, and evidence, has taken the uncontroverted and nonconclusory allegations as true, and resolved all controverted allegations in Plaintiff's favor. *See Panda Brandywine*, 253 F.3d at 868. The Court concludes Plaintiff failed to establish a *prima facie* case for personal jurisdiction.

### A.   Allegations in State Court Petition

In its State Court Petition, Plaintiff makes the following allegations regarding Defendants' actions:

> In the summer of 2021, Matrix discovered that Defendants were engaging in actions harmful to Matrix.
>
> Matrix learned that Defendants disparaged Matrix to Matrix's existing and prospective customers.  For example, Defendants held themselves out as representatives of Sing for Services LLC d/b/a MEPCO, the nation's leader in financing service contracts of the type provided by Matrix, and made these disparaging comments to Clear Path—with whom Matrix has enjoyed a profitable relationship for years.
>
> As a result of Defendants' actions, Clear Path ceased doing business with Matrix, completely interfering with the Agreement and disrupting the business relationship.
>
> Defendants made these communications in order to stop Clear Path from selling Matrix's Service Agreement and to compel Clear Path to sell the Staunton Group's preferred products which were from Dealer Loyalty Protection, Inc.

Original Pet. at 3-4, ¶¶14-17.  Plaintiff also alleges that Defendants "knew or had reason to know to Matrix's contract with Clear Path."  *Id.* at 5, ¶25.  Additionally, Plaintiff alleges that it was injured by the disparaging comments and its damages are "a proximate and foreseeable result of Defendants' actions".  *See, e.g., id.* at 4, ¶21; 5, ¶¶26-27; 5-6, ¶¶30-31; 6, ¶¶34-35.   "A forum State's exercise of [specific] personal jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum."  *Walden*, 571 U.S. at 286.  In its Petition, Plaintiff fails to assert any allegations from which the Court can determine Defendants' tortious conduct creates the necessary contacts with Texas to support the exercise of specific jurisdiction.  For example, the Petition is devoid of any allegations that the alleged disparaging communication was made within or directed into Texas, *Wien Air Alaska, Inc. v. Brandt,* 195 F.3d 208, 213 (5th Cir. 1999), or that Texas is also the home state for Clear Path and the primary location of its contractual relationship and business dealings with Plaintiff, *Cent. Freight Lines, Inc. v. APA Transp. Corp.*, 322 F.3d 376, 384 (5th Cir. 2003).

Plaintiff's allegations that Defendants interfered with and disrupted the business relationship between Plaintiff, a Texas entity, and Clear Path, whose location is not alleged, is not sufficient to show Defendants purposefully availed themselves of the benefits and protections of and minimum contacts with Texas.  The Fifth Circuit has repeatedly held that "mere allegations of tortious interference with a forum resident's

contractual rights are not sufficient to establish specific personal jurisdiction." *Cent. Freight Lines*, 322 F.3d at 383; *accord Panda Brandywine*, 253 F.3d at 868 ("[T]he mere allegation that an out-of-state defendant has tortuously interfered with contractual rights or has committed other business torts that have allegedly injured a forum resident does not necessarily establish that the defendant possesses the constitutionally required minimum contacts.") (citing *Far West Cap., Inc. v. Towne*, 46 F.3d 1071, 1079 (10th Cir. 1995)).  Likewise, Plaintiff's allegations that it was injured as a "foreseeable result of Defendants' actions" are not sufficient to create a contact with Texas for the exercise of specific jurisdiction.  *See Walden*, 571 U.S. at 290 ("[M]ere injury to a forum resident is not a sufficient connection to the forum.")  (citing *Calder*, 465 U.S. 483); *see Wien Air*, 195 F.3d at 212 ("Foreseeable injury alone is not sufficient to confer specific jurisdiction, absent the direction of specific acts toward the forum.").  Based on the allegations in the Petition, the Court cannot exercise personal jurisdiction over these Defendants in Texas as Plaintiff does not establish the necessary contacts Defendants made with Texas.  *Cf. Walden*, 571 U.S. at 286 ("We have consistently rejected attempts to satisfy the defendant-focuses 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State.").

### B.    "Contacts" as Argued in Plaintiff's Response

In its Response, Plaintiff attempts to give further explanation for its jurisdictional allegations and the basis for this Court's ability to exercise specific

jurisdiction over Defendants.   Plaintiff argues that "Defendants' tortious acts of interfering with [Plaintiff's] relationship with Clear Path are sufficient to establish minimum contacts as their conduct was intentional, expressly aimed at Texas, and caused [Plaintiff] an injury that Defendants should have anticipated would be suffered in Texas." Resp. at 11.  In addition to its allegations of tortious conduct and the injury suffered, Plaintiff specifically identifies the following as supporting specific jurisdiction: (1) Defendants knew of Plaintiff's relationship with Clear Path, that it was profitable, and that Plaintiff received revenue in Texas from that relationship; (2) Clear Path sold Plaintiff's Service Agreements in Texas, although the Clear Path Agreement was to be performed all around the country; (3) Plaintiff is a Texas entity; and (4) the Clear Path Agreement has a Texas choice of law provision.  Resp. at 11.  Apart from Plaintiff's location in Texas and Defendants' alleged knowledge of the Clear Path relationship, Plaintiff makes these additional allegations for the first time in its Response presumably to sufficiently connect Defendants to Texas in a meaningful way thus making a *prima facie* case of personal jurisdiction.

### 1.   Alleged Tortious Actions

First, as to Plaintiff's suggestion that the alleged tortious communications themselves establish purposeful availment by Defendants, that legal principle does not apply under these facts.  "When the actual content of communications *with* a forum gives rise to intentional tort causes of action, this alone constitutes purposeful

availment." *Wien Air*, 195 F.3d at 213.  In *Wien Air*, the defendant directed phone calls, faxes, and letters into Texas from outside of Texas, and the content of those communications gave rise to the plaintiff's tort claims.  Here, however, Plaintiff admits that the tortious communications occurred entirely outside of Texas, not *into or with* Texas.  Under clear Fifth Circuit case law, the alleged tortious communications in this case are not themselves sufficient to connect Defendants to Texas in a meaningful way to support exercising specific jurisdiction over them.  *See Danzinger & De Llano*, 24 F.4th at 497 (none of the defendants' allegedly tortious conduct connected them in a meaningful way to Texas because even though the plaintiff was *affected* in Texas, none of the defendants' conduct *occurred* in Texas); *cf. Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 157 (Tex. 2013) (citing prior precedent, the court held that "a non-resident directing a tort at Texas from afar is insufficient to confer specific jurisdiction.") (citing *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 790-92 (Tex. 2008)).

In *Fairchild v. Barot*, a case out this District, the plaintiff asserted several claims against the non-resident defendant, including tortious interference with a contract. 946 F. Supp. 2d 573, 576 (N.D. Tex. 2013) (Lynn, J.).  The alleged tortious communications occurred between the defendant and the third party with whom the plaintiff had contracted; both the defendant and third party were located outside of Texas.  *Id.* at 580.  The court found that the plaintiff did not make a *prima facie* case

for specific jurisdiction as the plaintiff had not pled or otherwise demonstrated that the tortious communications giving rise to the claim occurred within or were directed into Texas. *Id.* at 581; *see id.* at 580 ("[A] court does not have specific personal jurisdiction over a defendant alleged to have tortuously interfered with a contract, where that interference happened outside the forum state.") (citing *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 332 S.W.3d 1, 13-14 (Tex. App.—Fort Worth 2010), *aff'd on these grounds*, 414 S.W.3d 142, 156-57 (2013)). The Court finds this reasoning applies here. Plaintiff cannot make a *prima facie* case for specific jurisdiction where Defendants' tortious conduct— the alleged disparaging comments, which give rise to all of Plaintiff's claims—occurred entirely outside of Texas as such conduct does not create the required contact with Texas.

"A forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum." *Walden*, 571 U.S. at 286. The Court finds these alleged tortious comments cannot form the basis for specific jurisdiction over Defendants.

### 2.    Injury Felt in Texas

Plaintiff also asserts that it felt injury in Texas which Defendants should have anticipated. Resp. at 11. According to Plaintiff, this is sufficient to establish minimum contacts. Again, however, case law is clear that injury resulting from tortious conduct

does not alone provide a sufficient connection between the *defendants* and the forum. The Supreme Court emphasized that "mere injury to a forum resident is not a sufficient connection to the forum." *Walden*, 571 U.S. at 290 (citing *Calder*, 465 U.S. 483). Foreseeable effects of tortious conduct are simply considered "as *part* of the analysis of the defendant's relevant contacts with the forum." *Wien Air*, 195 F.3d at 212 (quoting *Allred v. Moore* & *Peterson*, 117 F.3d 278, 287 (5th Cir. 1997)); *see Walden*, 571 U.S. at 290 ("[A]n injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State."). The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden*, 571 U.S. at 290.

"Foreseeable injury alone is not sufficient to confer specific jurisdiction, *absent the direction of specific acts toward the forum*." *Wien Air*, 195 F.3d at 212. Plaintiff admits in its Response that Defendants' allegedly tortious conduct which gives rise to all of Plaintiff's claims occurred outside of Texas. Resp. at 11. Accordingly, any injury Plaintiff allegedly felt, even if in Texas, is alone insufficient to permit the exercise of specific jurisdiction over Defendants in Texas. Outside of the injury it felt in Texas, Plaintiff fails to show how Defendants' conduct or contacts connect them to Texas in any meaningful way such that they should have reasonably anticipated being haled into court in Texas. *Cf. Michiana*, 168 S.W.3d at 789 (Texas Supreme Court clarified that neither it nor the United States Supreme Court has ever said "[i]f a tortfeasor knows

that the brunt of the injury will be felt by a particular resident in the forum state, he

must reasonably anticipate being haled into court there to answer for his actions.").

Presumably in an effort to avoid this well-established law, Plaintiff attempts to

harmonize this case with *Calder v. Jones*, arguing that even though Defendants' tortious

acts occurred outside of Texas, that conduct had consequences in Texas which supports

personal jurisdiction.  Plaintiff's characterization of this case as analogous to *Calder* is

wrong.  In *Calder*, the Supreme Court held that the court in California could exercise

personal jurisdiction over the non-resident defendants for the libel claims asserted by

the plaintiff for the publication of an article in the National Enquirer, which had a large

circulation in California, was about a California actress, used California sources but

was written and edited in Florida.  465 U.S. 783, 784-86 (1984).  The Supreme Court

analyzed the contacts the defendants made with the forum and determined they

sufficiently satisfied due process for personal jurisdiction.  *Walden*, 571 U.S. at 287

(summarizing forum contacts in *Calder*: "The defendants relied on phone calls to

'California sources' for the information in their article; they wrote the story about the

plaintiff's activities in California; they caused reputational injury in California by

writing an allegedly libelous article that was widely circulated in the State; and the

'brunt' of that injury was suffered by the plaintiff in that State.") (citing *Calder*, 465

U.S. at 788-89).  In considering the sufficient contacts the defendants made with

California, the Supreme Court concluded that "California [wa]s the focal point both of

the story and of the harm suffered." *Calder*, 465 U.S. at 789.  The Supreme Court held that jurisdiction in California was proper "based on the 'effects' of [the defendants'] Florida conduct in California."  *Id.*

More recently, the Supreme Court in *Walden* clarified its application of the jurisdiction principles in *Calder*.  The Supreme Court explained,

> The crux of *Calder* was that the reputation-based "effects" of the alleged libel connected the defendants to California, not just to the plaintiff.  The strength of that connection was largely a function of the nature of the libel tort.  However scandalous a newspaper article might be, it can lead to a loss of reputation only if communicated to (and read and understood by) third persons. . . .In this way, the "effects" caused by the defendants' article—*i.e.*, the injury to the plaintiff's reputation in the estimation of the California public— connected the defendants' conduct to *California*, not just to a plaintiff who lived there.  That connection, combined with the various facts that gave the article a California focus, sufficed to authorize the California court's exercise of jurisdiction.

*Walden*, 571 U.S. at 287.  The Supreme Court remarked that whether the injury caused by the allegedly tortious conduct was suffered in the forum state is misplaced focus. *Id.* at 289.  "*Calder* made clear that mere injury to a forum resident is not a sufficient connection to the forum. . . . The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."  *Id.* at 290.

Thus, it is clear that *Calder*'s principles do not support Plaintiff's argument for personal jurisdiction.  Indeed, *Calder* and *Walden* emphasize that personal jurisdiction does not exist here.  Defendants themselves do not have "ample" contacts with Texas

to permit this Court to exercise personal jurisdiction over them in Texas based on the "effects" of Defendants' alleged tortious communications made outside of Texas to non-resident Clear Path. *Cf. Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 314 (5th Cir. 2007) (stating that effects jurisdiction "is rare" and the court has "expressly declined to allow jurisdiction for even an intentional tort where the only jurisdictional basis is the alleged harm to a Texas resident.") (citing *Panda Brandywine*, 253 F.3d at 870).

### 3.   Other "Contacts" or Connections with Texas

Besides the alleged tortious comments and the injury suffered, Plaintiff contends the following support the exercise of specific jurisdiction: (1) Defendants knew of Plaintiff's relationship with Clear Path, that it was profitable, and that Plaintiff received revenue in Texas from that relationship; (2) Clear Path sold Plaintiff's Service Agreements in Texas, although the Clear Path Agreement was to be performed all around the country; (3) Plaintiff is a Texas entity; and (4) the Clear Path Agreement has a Texas choice of law provision.  Resp. at 11.  Plaintiff cites no case law, and the Court can find none, that these allegations are sufficient contacts in personal jurisdiction analysis.  None of these assertions are "contacts" created by Defendants that sufficiently connect Defendants to Texas in a meaningful way that they should have reasonably anticipated being haled into court here.  The Supreme Court reiterated that the inquiry into "specific jurisdiction over a nonresident defendant 'focuses on the

relationship among the defendant, the forum, and the litigation.'" *Walden*. 571 U.S. at 283-84 (quoting *Keeton*, 465 U.S. at 775). First, Plaintiff's location in Texas is clearly its own contact with the forum. The allegation that Plaintiff's relationship with Clear Path was profitable and generated revenue to Plaintiff in Texas is also Plaintiff's, not Defendants', contact with Texas. Turning to the allegations related to the Clear Path Agreement itself, the Court is not convinced these provide a sufficient act or connection with Texas to subject these Defendants to jurisdiction of courts in Texas. Although Plaintiff asserts that Clear Path sold Service Agreements in Texas, Plaintiff admits, and its evidence establishes, that the Clear Path Agreement was performed across the United States. *See* Resp. at 11 & Ex. A-1 at 2; *but see Cent. Freight*, 322 F.3d at 384 (non-resident defendant was subject to the court's personal jurisdiction in Texas because it was the location of the plaintiff and where it was injured, and it was "the primary location of . . . the contractual relationship of two Texas-based companies whose business dealings are based in Texas."). Plaintiff also alleges the Clear Path Agreement contains a Texas choice-of-law provision, which is supported by its evidence. Defendants are not a party to this Agreement and Plaintiff does not allege or otherwise show that Defendants knew of this provision. Further, other than mentioning the existence of this provision in the Agreement, Plaintiff fails to offer any explanation how it is sufficient to show that Defendants purposefully directed their actions toward Plaintiff. The Court finds the Texas choice-of-law provision, without more, is not

sufficient to show Defendants purposefully directed their alleged tortious conduct toward Plaintiff. *Cf. Panda Brandywine*, 253 F.3d at 869 (affirming the district court's ruling that personal jurisdiction did not exist where the plaintiffs' allegations were insufficient to show the defendant purposefully directed its actions towards the plaintiffs and considered as part of its contacts analysis that the underlying contracts "are not governed by Texas law, are not to be performed in Texas, and have no relation to Texas other than the fortuity that [the plaintiffs] reside there.")  Plaintiff's allegations do not sufficiently demonstrate Defendants' conduct or connection with Texas are such that they should reasonably have anticipated being haled into court in Texas, and Plaintiff presents no facts suggesting otherwise. *See Burger King*, 471 U.S. at 474.

### 4.   *Danzinger & De Llano, L.L.P. v. Morgan Verkamp, L.L.C.*

The case before this Court is on all fours with a recent case before the Fifth Circuit, *Danzinger & De Llano, L.L.P. v. Morgan Verkamp, L.L.C.*  In *Danzinger*, the plaintiff, a Texas-based law firm, filed suit in a Texas federal court against an Ohio-based law firm and two of its attorneys asserting several claims including tortious interference with prospective contractual relations involving a client.  24 F.4th at 494. In support of its tortious interference claim, the plaintiff alleged the non-resident defendants emailed the prospective client, also a non-resident, to persuade him against entering into a formal agreement with the plaintiff. *Id.* at 497.  The Fifth Circuit

concluded that the defendants' allegedly tortious conduct may have *affected* the plaintiff in Texas, but none of it *occurred* in Texas.  *Id.*  Furthermore, the only arguable action connecting the defendants to Texas, an allegedly fraudulent reply to an unsolicited email from the plaintiff about the client, "d[id] not *meaningfully* connect [the defendants] to Texas."  *Id.* at 497-98 (reasoning that the court's prior holding that personal jurisdiction does not exist over a defendant who answers an uninitiated and unsolicited phone call should apply equally to a defendant who answers to an unsolicited email) (citing *Wilson v. Belin*, 20 F.3d 644, 649 (5th Cir. 1994)).  Accordingly, because no tortious action of the defendants "*meaningfully* connects" them to the forum, the Fifth Circuit concluded Texas courts cannot exercise personal jurisdiction over the defendants.  *Id.* at 498.  The same reasoning applies to the case at bar.  As the Court has repeatedly stated through its analysis, Defendants' alleged tortious conduct occurred entirely outside of Texas and Plaintiff fails to allege or show that any action taken by Defendants meaningfully connects them to Texas.

### 5.  Conclusion

Neither Plaintiff's allegations nor its evidence establishes a substantial connection *created by* Defendants with Texas. *See Walden*, 571 U.S. at 289 (the "proper lens" is "whether the *defendant's* actions connect him to the *forum*"); *see also id.* at 285-86 ("Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or

attenuated' contacts he makes by interacting with other persons affiliated with the State."). Plaintiff's presence in Texas and the injury it allegedly suffered in Texas cannot be that substantial connection between Defendants and Texas. *Id.* at 285 ("[T]he plaintiff cannot be the only link between the defendant and the forum."); *see id.* at 289 ("The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."). The Court finds Defendants "have no relation to Texas other than the fortuity that [Plaintiff] resides there." *Panda Brandywine*, 253 F.3d at 869; *cf. Walden*, 571 U.S. at 288-89 ("[N]o part of [the defendant's] course of conduct occurred in Nevada . . . . Petitioner never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to Nevada."). Having considered the record before it and resolving all controverted allegations in Plaintiff's favor, the Court finds Plaintiff fails to establish a *prima facie* case for specific personal jurisdiction over Defendants.

Because Plaintiff did not meet its burden, the Court need not address the fair and reasonable factor. *See Sangha*, 882 F.3d at 102. This Court cannot exercise personal jurisdiction over Defendant TSG or Defendant Carrillo on any of Plaintiff's tort claims against them. Because personal jurisdiction is lacking, the Court does not address Defendants' Motion with respect to dismissing the claims for violation of DTPA and conspiracy filed under Rule 12(b)(6).

IV.     Request for Leave to Amend

In a single paragraph at the end of its Response, Plaintiff includes a request for leave to amend its Complaint.  Resp. 15-16.  Plaintiff states the following:

> Finally, if the Court grants any portion of Defendants' Motion to Dismiss, Matrix respectfully requests it also grant Matrix leave to amend its petition.  Under Rule 15(a), "leave to amend shall be freely given when justice so requires."  Furthermore, a request for leave to amend should not be denied unless there is bad faith or undue delay by the movant or undue prejudice to the opposing party.  Grounds exist for leave to amend after removal of this action from state to federal court.

*Id.* (internal citations omitted).

Federal Rule of Civil Procedure 15(a) favors granting leave to amend and requires a trial court to "freely give leave when justice so requires."  FED. R. CIV. P. 15(a)(2).  But "[l]eave to amend is not automatic . . . . and may be denied for undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment, etc."  *N. Cypress Med. Ctr. Operating Co., Ltd. v. Aetna Life Ins. Co.*, 898 F.3d 461, 477 (5th Cir. 2018) (internal quotation omitted).  A formal motion to amend is not required but the party asking to amend must "set forth *with particularity* the grounds for the amendment and the relief sought."  *Pena v. City of Rio Grande City*, 879 F.3d 613, 617-18 (5th Cir. 2018); *accord U.S. ex. rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 387 (5th Cir. 2003).  A plaintiff that

simply "tack[s] on a general curative amendment request" in response to a motion to dismiss does not provide a sufficient basis for why the court should grant leave. *Goldstein v. MCI WorldCom*, 340 F.3d 238, 254 (5th Cir. 2003). The decision whether to grant or deny leave to amend a pleading is a matter within the district court's discretion. *See Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 590–91 (5th Cir. 2016).

Plaintiff provides no explanation for how it might cure any of the jurisdictional deficiencies raised by Defendants in their Motion to Dismiss. *See Goldstein*, 340 F.3d at 255 (holding that the district court properly exercised its discretion in denying leave to amend because plaintiffs "did not suggest in their responsive pleading any additional facts not initially pled that could, if necessary, cure the pleading defects"). Regardless, the Court concludes any amendment related to personal jurisdiction would be futile. The Court has considered Plaintiff's Response, the evidence it submitted in support, and additional facts supporting Plaintiff's jurisdictional allegations. However, for all the reasons set forth in the prior analysis, the Court in its discretion **denies** Plaintiff's request for leave to amend as futile because Plaintiff has put forth its best argument. *See Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872-73 (5th Cir. 2000) ("It is within the district court's discretion to deny a motion to amend if it is futile."); *see also Callais Cap Mgmt, L.L.C. v. Wilhite*, 2022 WL 445160, at *1 (5th Cir. Feb 14, 2022).

## V.      Conclusion

Because Plaintiff failed to establish a *prima facie* case of personal jurisdiction, the Court **GRANTS** Defendants' Motion to Dismiss under Rule 12(b)(2).  The Court does not rule on Defendants' Motion to Dismiss under Rule 12(b)(6) for failure to state a claim because the Court lacks jurisdiction over Defendants.  The Court **DENIES** Plaintiff's request for leave to amend its petition because any amendment of the jurisdictional allegations and facts in support would be futile.  The Court hereby **dismisses** this case **without prejudice**.

**SO ORDERED.**

Signed June 2nd, 2022.

_Ed Kinkeade_

ED KINKEADE
UNITED STATES DISTRICT JUDGE